IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ONREE NORRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 1:18-cv-02163-MLB |
| JERMAINE HICKS, DAVID CODY, ) | |
| DAVID LEMACKS, JEROME ) | |
| MOORE, STEPHEN PARRISH, ) | |
| unidentified members of the Flint ) | |
| Circuit Drug Task, and unidentified ) | |
| members of the Henry County Special ) | |
| Response Team, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT DAVID CODY'S MOTION FOR SUMMARY JUDGMENT

Comes now, Onree Norris ("Plaintiff"), by and through his attorney, Darryl L. Scott, and hereby files this his Brief in Opposition to Defendant David Cody's Motion for Summary Judgment. Plaintiff concedes that qualified immunity is appropriate to the remaining named Defendants, Hicks, Lemacks, Moore and Parrish.[1] Plaintiff urges the Court however to deny Defendant Cody's Motion and shows the Court as follows:

---

[1] Defendant Hicks filed his Motion for Summary Judgment separately from his co-defendants. [Doc 59].

1

## I. ISSUE PRESENTED

Defendant Cody was charged with executing a no-knock search warrant after being provided the search warrant, the address and an accurate physical description and location of the target residence. He thereafter entered, and allowed a group of subordinates officers to enter a neighboring residence, Plaintiff's home, despite the residence not matching the warrant description and not knowing whether Plaintiff's home was the correct residence. Is Defendant Cody entitled to qualified immunity?

## II. STATEMENT OF RELEVANT FACTS

On January 31, 2018, Defendant Jermaine Hicks ("Hicks"), a member of the Flint Circuit Drug Task Force ("FCDTF"), secured a no-knock search warrant for the residence located at 305 English Rd., McDonough, Georgia 30253. The search warrant was secured following an extensive investigation of a reportedly violent narcotics dealer, Gemar Watkins, and contained turn-by-turn directions to the residence along with a accurate physical description of the property. (Ex. A, Search Warrant).[2] Given the high-risk nature of the warrant, FCDTF requested the

---

[2] The Search Warrant describes 305 English Rd. as "a one story single-family residence, with off white side and a black roof. The residence has a black mailbox on a wooden post. The address of 305 English Rd. along with the name Watkins are clearly displayed on the mailbox."

assistance of the Henry County Sheriff's Special Response Team ("Henry SRT") in executing the warrant.

On February 8, 2018, all members of FCDTF and Henry SRT who were participating in the raid met at the Henry County Sheriff's Department for a pre-execution briefing. [Hicks Dep. at 23-24]. During the briefing, Hicks presented a Power Point slide show that contained details regarding the operation including the common radio channel, responsibilities of FCDTF members and Henry SRT members, and an aerial photograph of the target location. (*Id.* at 25, Ex. B, Powerpoint Presentation). Hicks further advised all the participants that 305 English Rd. would be surrounded by broken down vehicles. [Cody Dep. at 37:16-20, Ex. C, Henry SRT Incident Reports at 4]. The warrant and operations plan were made available to all participants and questions were encouraged. [Hicks Dep. at 25:18-27:7, Marlowe Dep. at 22:9-15]. Cody read the search warrant which described the target as having "off white" siding. [Cody Dep. at 13:2-4]. It was agreed that FCDTF would secure the perimeter, including vehicles in the yard, while Henry SRT would be responsible for execution of the warrant. [Marlowe Dep. at 23:6-17].

Defendant David Cody ("Cody"), Commander of Henry SRT, then presented the tactical entry plan to all participants and assigned responsibilities to Henry SRT

members. Moreover, Cody assumed command of the operation following the briefing. [Parrish Dep. at 25:10-26:11].

> Q. After they were finished, then Commander Cody with the Henry Special Response Team would have presented some information; is that right?
>
> A. Right. They typically will pull up – I think they pulled up this exact picture just about, whichever one is on the actual PowerPoint, the PowerPoint picture which I guess is this one. And they will get up there and make their marks and point and say that hey, this is where I want somebody at. And they will do their decision of where I want a vehicle and where I want this vehicle and they take control even over us at that point.
>
> So they will say hey, I want the drug task force guys to be here, here, here and here. When we hit this house, we'll do this, you guys do that. And as soon as the all clear is given, that's -- it's kind of like passing off the keys to a residence so – if you buy a house. So whenever we decide to use a tactical unit, that's not just us hitting it regardless of who it is. As soon as the tactical portion is put in to place or as soon as we leave the briefing location, **Commander Cody is in charge of everything**. And then as soon as everything is done and it's time to search and do the other portion of it, it's passed back off to whoever the actual operational controller is of our case. [emphasis added].

*Id*. All participants in the operation then traveled in a convoy to 305 English Rd. *Id.* at 11:21-25. Cody travelled in a van along with other members of Henry SRT who would be entering the target residence.[3] (Cody GoPro, Video 1). Upon arrival, the van parked in the dirt path that runs adjacent to 305 English Rd. behind FCDTF agents Hicks and Lemacks. The raid team then exited the van and proceeded towards the target location behind Cody. (Kendig GoPro, Video 4).

---

[3] Eight videos taken on GoPro cameras worn by Henry SRT members can be viewed at the following link: https://grsmb.sharefile.com/d-s3020f4b83ef44dd8.

As the team begins moving forward, Cody throws a flash grenade in front of 305 English Rd. because he thinks it is the target location. [Cody Dep. at 26:6-13]. He then leads the team around the side and to the rear of 305 English Rd. Once Cody goes around the back of 305 English Rd., he pulls back, while the team continues past 305 English Rd. and on to 303 English Rd., because he isn't sure if it is the correct house. [Cody Dep. at 29:12-25].[4] Meanwhile, while Cody is strolling through the yard at 305 English Rd. confused as to whether the team has arrived at the correct house, the team proceeds to 303 English Rd. making forcible entry into Plaintiff's home pointing their assault rifles. (GoPro Video 3, 1:57-2:15). Plaintiff, an eighty year old who has lived at his residence for fifty-five years and never been arrested, was taken into custody at gunpoint. [Norris Dep. at 8:13, 13:14-16]. When the mistake was discovered, Plaintiff was then released after being presented with and told he had to sign a release form by an officer. *Id.* at 62:16 to 63:10.

Despite not knowing if Plaintiff's home was the target residence and not seeing anyone flee to the residence, Cody failed to initiate radio contact or otherwise prevent the team from entering Plaintiff's home. Furthermore, Cody did

---

[4] Multiple raid team members express uncertainty regarding the location of the target residence prior to the wrongful entry into Plaintiff's home. (GoPro Video 2 at 1:38, Video 3 at 2:05, Video 5 at 2:10, Video 7 at 1:58).

not seek the assistance of FCDTF members, with whom he was in radio contact with, to identify the correct house. [Cody Dep. at 30:8-25].[5] Thirty seven seconds after the team makes entry, Cody walks over and enters Plaintiff's home along with other members of the team. (Cody GoPro Video 1).

After Cody exits Plaintiff's home, Lt. Matthew Marlowe ("Marlowe"), the lead officer with FCDTF, demanded an explanation and told Cody "there was no reason for him to be there." [Marlowe Dep. 41:3-4]. Cody, and other members who made entry, explained that the target residence "looked like an abandoned house and that no one was there, so they moved to the house where there were lights on." *Id.* at 41:16-20.

305 English Rd. is easily distinguishable from Plaintiff's home at 303 English. First, the properties are approximately 40 yards apart and located on separate parcels of land. [Hicks Dep. 17:16-19]. Secondly, Plaintiff's home has yellow siding rather than the "off-white" siding described in the Search Warrant. [Marlowe Dep. at 25:11-21].[6] Thirdly, Plaintiff's home has a clear lot with grass

---

[5] The testimony of Cody and Kendig reflect a reluctance to use the radio prior to making entry due to concerns regarding noise or alerting a potential suspect. However, by the time that the raid team moved behind 305 English Rd., there had been multiple flash bangs and yelling at the location. (GoPro Videos).

[6] Cody wrote in his post incident report that Henry SRT was briefed that the target residence was yellow. (Ex C at 2). However, no testimony supports that anyone ever advised Henry SRT during the briefing that the target location was yellow. [Hick Dep. at 35, Cody Dep. at 14, Parrish Dep. at 26, Kendig Dep. at 23].

around his home rather than being surrounded by junk vehicles like 305 English Rd. Lastly, Plaintiff's home is the second home on the left, not the first, after making a left turn on English Rd and has a separate driveway and mailbox.

### III. STANDARD FOR SUMMARY JUDGMENT

The 11th Circuit reviews a district court's grant of summary judgment de novo. <u>Thomas v. Cooper Lighting, Inc.</u>, 506 F.3d 1361, 1363 (11th Cir. 2007). "Summary judgment is appropriate only if 'there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>United States v. Four Parcels of Real Prop.</u> 941 F.2d 1428, 1437 (11th Cir. 1991). "In making this determination, we review the record, drawing all reasonable inferences in the light most favorable to the nonmoving party." <u>Damon v. Fleming Supermarkets of Fla., Inc.</u>, 196 F.3d 1354, 1358 (11th Cir. 1999).

### IV. ARGUMENT AND CITATION TO AUTHORITY

It is "well-established as a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." <u>Hartsfield v. Lemacks</u>, 50 F.3d 950, 954 (11th Cir. 1995). However, an accidental search of the wrong location may not violate the Fourth Amendment

when "'the officers' conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched . . . .'" *Id.* at 955-56 (quoting <u>Maryland v. Garrison</u>, 480 U.S. 79, 88-89 (1987)). Accordingly, it is clearly established that "absent probable cause and exigent circumstances, a warrantless search of a residence violates the Fourth Amendment, **unless the officers engage in reasonable efforts to avoid error."** *Id.* at 955. But officers who do not independently verify the location of a search may avoid liability when they reasonably rely on a **superior officer's erroneous direction.** See *Id.* at 956; see also <u>Shepard v. Hallandale Beach Police Dep't</u>, 398 F. App'x 480, 483 (11th Cir. 2010).

### A.  The law is clearly established on the facts of this case.

"When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important.  The facts need not be the same as the facts of the immediate case.  But they do need to be materially similar…" <u>Hartsfield</u>, 50 F.3d at 954.  There are cases from the 11th Circuit with materially similar facts.

In <u>Treat v. Lowe</u>, 668 Fed. Appx. 870 (11th Cir. 2016), the defendant officer, Lowe, was not involved in the underlying investigation but attended a pre-raid

briefing held by the investigating officer.[7] Lowe was then charged with executing a search warrant at a designated location. Id. Prior to leaving the briefing location, all officers involved made sure they were all on the same radio frequency. Id. Despite on the same radio frequency, Lowe did not contact other officers to verify they were entering the correct residence. *Id.* Lowe and other officers then erroneously entered a neighboring residence close to the target location with weapons aimed. The 11th Circuit affirmed the denial of qualified immunity finding that a jury could conclude that Lowe failed to engage in reasonable effort to avoid error. All of the above facts from *Treat* mirror the facts of the case at bar. Just like *Treat*, Cody was "executing a search warrant at a designated location" but did not use the radio to verify the location, and Cody erroneously followed instructions after being given the correct location and address.

In *Hartsfield*, the investigating officer, Newton, visited the target residence the day before he secured a search warrant and led officers on a raid to a neighboring residence. Among other reasons, the court found the two homes distinguishable because the "Hartsfields' house differed in that it had a fence around it, and that Groom's house had junk cars and the like strewn outside." *Hartsfield*, 50 F.3d at 952. The court further emphasized that "there were no

---

[7] Additional factual detail regarding the case is located within the District Court opinion. *Treat v. Lowe*, 2016 U.S. Dist. Lexis 38840 (S.D. Ga 2016).

exigent circumstances involved; on the contrary; the raid had been carefully staged…" Id. The court denied qualified immunity to Newton because his actions were not "consistent with a reasonable effort to ascertain and identify the place intended to be searched". Id at 955.

As in *Hartsfield*, the raid at issue was carefully staged, there were no exigent circumstances, there was no probable cause to enter Plaintiff's house and the properties were easily distinguishable especially considering the residences were different colors and the target residence was surrounded by junk cars and the like strewn outside. And similar to Hartsfield, Cody was the only member of his team, Henry SRT, who had seen the search warrant prior to entry. [Cody Dep. at 13:2-13, Kendig Dep. at 24:4-23, Hicks Dep. at 26:1-20].

Under the facts of the above cases and other relevant law[8], any reasonable officer in Cody's position would understand that entering, and allowing his subordinates to enter, Plaintiff's home would violate the law. Accordingly, the law as applicable to the facts of this case was clearly established.

---

[8] See also *Steele v. United States*, 267 U.S. 498 (1925); *Silverman v. United States*, 365 U.S. 505 (1961); *Chimel v. California*, 395 U.S. 752 (1969); *Maryland v. Garrison*, 480 U.S. 79 (1987); *Anderson v. Creighton*, 483 U.S. 635 (1987); *Hill v. California*, 401 U.S. 797 (1971); *Grohm v. Ramirez*, 540 U.S. 551 (2004). *Bah v. Little*, 2015 U.S. Dist LEXIS 62835 (N.D. GA 2015).

10

### B. Cody did not exercise reasonable efforts to avoid error.

Any reasonable police officer in Cody's shoes would have known that allowing his team to forcefully enter and search the Plaintiff's residence, when he didn't know if it was the correct residence, violated the law. [Cody 29:20-25]. The search of Plaintiff's home was reckless and unreasonable given that it had, at best, a fifty percent chance of being the correct house. Id at 16-19. Had Cody been familiar with the description of the target residence, as described in the warrant, the mistake would have been avoided. Furthermore, because the evidence shows that Cody was given the correct address and location of the target residence, he should have known that entering Plaintiff's home would violate Plaintiff's constitutional rights. *Treat v. Lowe*, 668 Fed. Appx. 870 (11th Cir. 2016).

Similar to *Hartsfield*, Cody was the only member of his team, Henry SRT, who had seen the search warrant prior to entry. [Cody Dep. at 13:2-9, Kendig Dep. at 24:4-23, Hicks Dep. at 26:1-20)]. And just like *Hartsfield*, the target residence differed in description from Plaintiff's home and had junk cars and the like strewn outside. *Hartsfield*, 50 F.3d at 952. Moreover, the facts of the instant case go beyond those in *Hartsfield* in that Cody harbored doubts regarding Plaintiff's home being the correct house prior to entry. (Cody 29, ll 16-19). In comparison, the defendant officer in *Hartsfield* only realized that he had led officer to the wrong

11

address after he departed. *Hartsfield*, 50 F.3d at 952 (11th Cir. 1995). Directing subordinate officers to the wrong house, as in *Hartsfield*, is no different than allowing subordinate officers to enter the wrong house without justification. In any event, Cody as the superior officer unreasonably entered Plaintiff's home just thirty-seven seconds after his team made entry and while the team remained in the home.

Cody's argument for qualified immunity relies heavily on the holding from *White v. McLain*, 648 F.App'x 838, 842 (11th Cir. 2016), an unpublished opinion. [Doc 55 at 14-15]. In *White*, the defendant officer erroneously identified a house and included an erroneous description with photos in his application for search warrant. Id. at 4. In contrast, the target residence here was accurately described in the search warrant and during the pre-execution briefing. [Marlowe Dep. at 42:7-9]. Cody unfortunately did not familiarize himself with the description. Primarily, the facts knowable to Cody were the exact location of the target house, and that the house was off-white and surrounded by broken down cars. Accordingly, as Plaintiff's home is located on a separate parcel of land and did not match the description, it was not reasonable to misidentify his home as the target residence.

Plaintiff further argues that this is an obvious case in which Cody was palpably unreasonable. Based on the objective facts, the two residences are easily distinguishable such that no reasonable officer could confuse the two.

### C. Cody did not reasonably follow the lead of a primary officer.

On this motion for summary judgment, the court should view the evidence in the most favorable to Plaintiff. Cody argues that he is entitled to qualified immunity because he delegated authority to his forward officer, Eric Kendig, and then reasonably followed Kendig's lead after the team had made entry into Plaintiff's home. His argument is flawed under *Hartsfield* and *Shepard* because he did not rely on a **superior officer's erroneous direction**; instead he was the superior officer. In fact, Cody was the lead officer with tactical control overseeing the operation. [Kendig Dep. at 21:3-9; Marlowe Dep. at 23:11-17; Parrish 26:5-7]. Furthermore, Kendig, the forward officer, described his role as "pretty much a liason between him [Cody] and the team "[9] rather than one of absolute authority over the raid team. [Kendig Dep. at 20:14]. Given that Cody orchestrated the operation, was charged with executing the warrant and had operational control, he is not an assisting officer entitled to protection under *Hartsfield* and *Shephard*.

---

[9] Parrish described Cody as being "in charge of everything" while Marlowe described Cody as responsible for "actual service of the warrant." [Kendig Dep. at 20:14-20; Marlow Dep. at 23:16-17].

13

Furthermore, there is no evidence of any activity at or towards Plaintiff's which would have led Kendig to Plaintiff's home. Importantly, Kendig is at the back of the group throughout their approach around 305 English Rd. and onto to Plaintiff's home. (GoPro Video 4). In contrast, at the time that the team began moving past 305 English Rd., Cody was at the front of the group and was better situated to witness any activity at or towards Plaintiff's home. (GoPro Video 1). There was no activity. As such, even if Cody followed Kendig, he did so unreasonably and should have known that his conduct might result in a Fourth Amendment violation.

### D. Supervisory Liability against Cody

In order for a supervisor to be liable under Section 1983 the Plaintiff may show "either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988). Here, there is no legitimate dispute that Cody personally participated in the constitutional violation by permitting his subordinates to enter Plaintiff's home and by entering himself. Furthermore, there is a causal connection between Cody's failure to exercise reasonable effort to avoid error because he was responsible for properly executing the search warrant and could have ordered his

14

team to not enter Plaintiff's home. [Kendig Dep. at 26:25, 27:1-10]. Accordingly, although Cody was not part of the initial group that entered Plaintiff's home, the evidence supports a supervisory liability claim under Section 1983.

The sanctity of Plaintiff's home was violated and he deserves the opportunity to have his rights vindicated. As stated by Chief Justice Marshall: "The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right." *Marbury v. Madison*, 5 U.S. 137, 163 (1803). For the above stated reasons, qualified immunity should be denied.

## V. CONCLUSION

As stated above, Defendant Cody's Motion for Summary Judgment should be denied and Plaintiff should be permitted to moved forward with his Fourth and Fourteenth Amendment Claims, Attorney's Fees and Costs, and Punitive Damages.

.

The undersigned, in accordance with L.R. 7.1 and 5.1(C), hereby certifies that the type font used herein is 14-Point Times New Roman

Respectfully submitted this _22nd_ day of April, 2019.

/s/ Darryl L. Scott

Darryl L. Scott
Attorney for Plaintiff
Georgia Bar No. 635479

Law Office of Darryl L. Scott, LLC
320 Corporate Center Court
Stockbridge, GA 30281
(770)474-5646
darryl@dscottlawoffice.com

## **CERTIFICATE OF SERVICE**

I do hereby certify that I electronically filed **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT CODY'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorney of record.

Harvey S. Gray
Dianna J. Lee
Gray Rust St. Amand Moffett & Brieske
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, Georgia 30326
hgray@grsmb.com
dlle@grsmb.com

Kevin G. Morris
Williams, Morris & Waymire, LLC
Bldg. 400, Suite A
4330 South Lee Street
Buford, GA 30518
kevin@wmwlaw.com

Respectfully submitted, this the _22nd_ day of April, 2019.

/s/ Darryl L. Scott
Darryl L. Scott
Ga. Bar No. 635479
Attorney for Plaintiff

Law Office of Darryl L. Scott, LLC
320 Corporate Center Court
Stockbridge, GA 30281
(770) 474-5646
Darryl@dscottlawoffice.com